**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAY AINSWORTH,

        Plaintiff-Appellant,

  v.

INDEPENDENT SCHOOL DISTRICT
NO. 3 OF TULSA COUNTY,
OKLAHOMA,

        Defendant-Appellee.

No. 06-5126
(D.C. No. 04-CV-694-JHP-PJC)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

Plaintiff Jay Ainsworth appeals from the district court's entry of summary

judgment in favor of defendant Independent School District No. 3 of Tulsa

County, Oklahoma (the School District) on his claim of discrimination under the

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (ADA).  We have

jurisdiction under 28 U.S.C. § 1291.  We affirm.

## I.  Background

Except for a few noted disputes between the parties, the record establishes

the following facts when viewed in the light most favorable to Mr. Ainsworth, *see*

*Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).  Mr. Ainsworth, who suffers

from an epileptic condition called partial complex seizure disorder, began serving

as a substitute teacher for the School District on August 20, 2001.  When he

applied for the position, he did not indicate that he suffered from any serious

physical condition that could limit his job performance.  Sometime in October

2001, Mr. Ainsworth became dizzy after arriving at North Intermediate High

School for a substitute assignment and was helped to the nurse's office.  He then

called the School District's substitute coordinator, LaureAnn Price, and told her

that he might not be able to teach that day because his epilepsy medication was

too high and causing him dizziness.  He later called Ms. Price to say he would be

able to complete his assignment, at which time she gave him an additional

assignment to teach another class that day.

Thereafter, Mr. Ainsworth continued to receive substitute assignments.

One of those assignments occurred on November 15 when he substituted in an

eighth-grade math class at Haskell Middle School.  The next day, a number of

students told their regular teacher, Robin Emerson, about Mr. Ainsworth's

-2-

behavior. According to Ms. Emerson's affidavit, the students told her that Mr. Ainsworth had written the word "sex" on the overhead projector and displayed it on the screen, "instructed the students to discuss their sex lives with one another," "licked the chalkboard in a lewd and lascivious manner," and "forcibly removed a piece of chalk from a student's hand and pushed the student into the hallway where he remained unsupervised for the entire hour." Aplt. App., Vol. II at 368-69, ¶ 4.

Ms. Emerson notified the Haskell principal, Phillip Tucker, who went to the classroom and observed the word "sex" written on the overhead projector. He then instructed the school's main-office secretary, Penny Ayers, to contact Ms. Price, relate the reported conduct to her, and ask that Mr. Ainsworth not be assigned to Haskell again. Ms. Ayers did so by an email sent at 9:28 a.m. on November 16, 2001. The email reported that Mr. Ainsworth "asked the students to discuss their sexual relations with the class." *Id*. at 450. It also reported that "he wrote the word 'sex' on the overhead and divided the class into groups and instructed them to discuss their relations with each other. . . . He [also] took chalk from [a student's] hand and physically pushed her away" from the blackboard. *Id*. Ms. Ayers requested that Mr. Ainsworth not be assigned to Haskell again.

The parties dispute what happened next. According to Ms. Price's affidavit, she informed her supervisor, Cathey Metevelis, of the allegations. Ms. Metevelis is the School District's Director of Human Resources and is

responsible for ultimate employment decisions. At the time, she had never met Mr. Ainsworth and claims she did not know anything about his epilepsy. After considering the allegations, Ms. Metevelis decided that Mr. Ainsworth should not receive any more substitute assignments from the School District. Ms. Price then sent a reply email to Ms. Ayers, stating that Mr. Ainsworth would "never again at ANY school" teach as a substitute. *Id*. at 455. The reply email was sent on November 16, 2001, at 9:28 a.m. *See id*. Mr. Ainsworth, however, argues that because the date and time of Ms. Price's reply is the same as the date and time of Ms. Ayers's email, it was impossible for Ms. Price to consult with Ms. Metevelis before sending her reply, and that it was Ms. Price who made the decision.

Despite the decision not to give him any more assignments, Mr. Ainsworth continued to teach as a substitute for the School District after November 16. This occurred because individual schools often bypassed the system for obtaining substitutes. That system required schools who needed a substitute to leave a message with Ms. Price and wait for her to find a substitute, which often resulted in a failure to ensure full staffing by the start of the school day. Instead, an individual school often directly contacted a teacher who previously had substituted for it.

On December 7, Mr. Ainsworth substituted in a sixth-grade multimedia class at Sequoyah Middle School. Students there reported to their principal that Mr. Ainsworth tried to use a computer to access a website blocked by the school's

filtering software. When the principal went to the classroom, she observed Mr. Ainsworth seated at a computer terminal with a web browser open and not exercising proper control over the students. The principal instructed her assistant to contact Ms. Price and request that Mr. Ainsworth not be assigned to Sequoyah again.

When Ms. Metevelis found out that Mr. Ainsworth was still teaching as a substitute, she reaffirmed her decision to remove him from the list of substitute teachers and notified all of the schools of that decision directly. Because the notification was not completed until December 14, Mr. Ainsworth was able to work two additional assignments on December 12 and 13. Ms. Metevelis stated in her affidavit that Mr. Ainsworth should never have subbed for the School District after November 16, 2001, and that she remained unaware of his impairment in December 2001. Mr. Ainsworth claims that he had a seizure during one of his December assignments but could not recall the precise date. *Id.*, Vol. I at 148 (Ainsworth Dep. at 232:8-14).

Several weeks later, Mr. Ainsworth asked Ms. Price why he was not receiving assignments. She reportedly told him it was because teachers were requesting other persons as preferred substitutes. In March 2002, Mr. Ainsworth learned from a third party that he had been removed from the list of substitute teachers for not following proper procedures concerning student assignments.

Mr. Ainsworth filed a charge of discrimination with the Oklahoma Human Rights Commission (OHRC), which found that because the School District could not provide any direct evidence that he had committed any of the alleged acts, it had failed to provide a legitimate business reason for removing him from the list of approved substitute teachers. The OHRC therefore concluded there was reasonable cause to believe that the School District had discriminated against Mr. Ainsworth based on his disability.

Mr. Ainsworth then filed this action in Oklahoma state court, which the School District removed to federal court. In its motion for summary judgment, the School District argued that Mr. Ainsworth could not establish the third element of a prima facie case of discrimination—that his employment was terminated under circumstances giving rise to an inference of discrimination. The School District also argued that Mr. Ainsworth could not establish that its proffered reason for discharging him—his conduct in the eighth-grade math class at Haskell Middle School—was pretextual. The district court granted the motion, first finding that Mr. Ainsworth was not disabled under the ADA. But because the parties had not questioned whether Mr. Ainsworth was disabled under the ADA, the court did not base its decision on that finding. Instead, the court determined that Mr. Ainsworth could not establish the third element of his prima facie case and, in the alternative, that he could not establish pretext. Mr. Ainsworth appealed.

## II. Discussion

### A. General Legal Standards.

We review the district court's grant of summary judgment de novo, using the same legal standard applicable in the district court. *Baca*, 398 F.3d at 1216. Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under this standard, we view the evidence, and draw all reasonable inferences from it, in the light most favorable to the nonmoving party. *Baca*, 398 F.3d at 1216.

Because Mr. Ainsworth does not rely on any direct evidence of discrimination, the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and its progeny governs the analysis of his claims. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 & n.3 (10th Cir. 1997) (applying *McDonnell Douglas* in ADA context). On summary judgment, "a plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case." *Id.* If a plaintiff establishes a prima facie case, the burden shifts to the defendant "to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* If the defendant comes forward with such a reason, "the burden then reverts to the plaintiff to show that there is a genuine

dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (quotation omitted).

**B. Prima facie case**

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that (1) he is disabled within meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) his employer terminated his employment under circumstances that give rise to an inference that the termination was based on his disability. *Id.* The parties do not dispute that Mr. Ainsworth is disabled within the meaning of the ADA, and the district court did not base its disposition on its contrary finding.[1] Therefore, we will assume without deciding that Mr. Ainsworth has established the first prong of his prima facie case. Because the second prong is not in dispute, we may proceed to the third. "The third prong of the test requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision," a burden that is "not onerous" but also "not empty or perfunctory." *Id.* at 1323-24.

---

[1]     Regarding the district court's discussion of the first element of the prima facie case, Mr. Ainsworth's counsel states that the court "decided sua sponte to lecture" the parties, a "tactic," counsel contends, that "serves only to poison the well, or at least to misdirect appellate attention from the poverty of the greater part of the district court's reasoning." Aplt. Opening Br. at 6. This is but one example of counsel's many statements that evidence disrespect for the district court and a lack of professionalism. This court will not tolerate similar conduct by counsel in the future.

We first reject Mr. Ainsworth's argument that the district court required him to produce direct evidence of, and prove, causality in order to avoid summary judgment. The court recited the test quoted above from *Morgan* and discussed some of the circumstantial evidence on which Mr. Ainsworth relied in reaching its finding that Mr. Ainsworth had presented "no competent evidence" of causality, Aplt. App., Vol. I at 322, and it did not require him to prove a causal connection, but only to "'present some affirmative evidence that disability was a determining factor'" in the employment decision, *id.* at 321 (quoting *Morgan*, 108 F.3d at 1323-24).

Mr. Ainsworth next raises a number of points concerning the court's finding that he had not met his burden on the third prong of his prima facie case. He first directs us to a letter Ms. Metevelis sent to the OHRC in May 2002 and a summary prepared by the OHRC in September 2003.[2] In her letter, Ms. Metevelis stated that neither she nor Ms. Price had "any record of any purported 'disability' impacting Mr. Ainsworth" and were not aware "of any difficulties which his

_____

[2]     As with most of his references to the record, Mr. Ainsworth fails to cite to the precise page where the court may find the materials on which he relies. Instead, he cites to portions of his summary judgment response brief, apparently expecting us to cross-reference the exhibits cited in that brief and locate the precise page in the record where the supporting documentation resides. Such circuitous referencing is extremely inefficient for the court and is contrary to Fed. R. App. P. 28(a)(9)(A), which requires that an appellant's brief contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."

purported disability may have caused in his functioning as a substitute teacher." *Id.* at 170. The OHRC summary notes this statement, then continues with the following: "Ms. Metevelis later stated that [Mr. Ainsworth] had had a seizure on October 31, 2001. Evidence demonstrated that [he] did not even work" on that date. *Id.* at 260. Mr. Ainsworth characterizes Ms. Metevelis's statements as conflicting testimony regarding her awareness of his impairment that creates a fact issue precluding summary judgment at the prima face stage of the analysis.

Contrary to Mr. Ainsworth's contention, and as the School District points out, neither of these statements constitutes "testimony" by Ms. Metevelis. In any event, the two statements do not create a conflict concerning whether Ms. Metevelis was aware of Mr. Ainsworth's impairment in November 2001. The OHRC summary indicates only that sometime after writing her May 2002 letter, Ms. Metevelis stated that Mr. Ainsworth had had a seizure in October 2001. Assuming the OHRC summary is an accurate portrayal of a statement Ms. Metevelis actually made, the statement does not say anything regarding the state of her knowledge, or of the School District's records, in November 2001. Accordingly, there is no conflict between the statements.

Mr. Ainsworth next contends that because Ms. Price knew of his impairment and recommended that Ms. Metevelis remove Mr. Ainsworth from the list of substitute teachers, the decision was discriminatory. The School District dismisses the factual allegation concerning Ms. Price's role in the decision as

-10-

mere speculation, but Ms. Metevelis stated in her letter to the OHRC that

Ms. Price had in fact made such a recommendation. *See id.* at 171. Although it

is undisputed that Ms. Price became aware of his impairment in October 2001,

Mr. Ainsworth has not provided any affirmative evidence that her

recommendation was motivated by discrimination. And while we have held that

an employer must know of a disability before it can be held liable under the ADA,

*see Whitney v. Bd. of Educ.*, 292 F.3d 1280, 1285 (10th Cir. 2002), it does not

follow that a reasonable inference of discrimination may be drawn from mere

awareness of a disability or that mere awareness is affirmative evidence that may

establish the third element of the prima facie case. Ms. Price's mere awareness of

Mr. Ainsworth's impairment, particularly when viewed in conjunction with the

fact that she continued to give him assignments after gaining that awareness, does

not constitute affirmative evidence that disability was a determining factor in her

recommendation.[3]

---

[3]    Mr. Ainsworth mistakenly relies on *Olson v. General Electric Astrospace*, 101 F.3d 947 (3d Cir. 1996), *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989), and *Breda v. Wolf Camera & Video*, 222 F.3d 886 (11th Cir. 2000), to suggest that mere knowledge of an impairment by an employee who recommends an adverse employment decision is sufficient to avoid summary judgment at the third prong of the prima facie case. None of these extra-circuit cases concerned whether mere awareness of a disability constituted affirmative evidence that the disability was a motivating factor in either a supervisor's recommendation or the ultimate employment decision. *Olson* concerned whether there was "a genuine issue of material fact as to whether [the employer] perceived [the employee] as disabled" based on a supervisor's perception and whether the supervisor's perception affected an adverse hiring recommendation. 101 F.3d

(continued...)

-11-

Mr. Ainsworth also makes much hay out of the undisputed fact that Ms. Ayers's email and Ms. Price's reply both occurred at 9:28 a.m. on November 16. Viewed in the light most favorable to Mr. Ainsworth, the immediacy of the reply suggests that Ms. Price may not have had enough time to consult with Ms. Metevelis before responding, as she maintains. But no reasonable inference of discrimination can be drawn from this. At most, Ms. Price's contention that she talked to Ms. Metevelis first, if viewed as untrue, suggests only that she had overstepped her authority by relating a decision to Ms. Ayers that indisputably was Ms. Metevelis's to make. And based on the content of Ms. Ayers's email, Ms. Price's response was a justifiable one—Mr. Ainsworth himself admitted as much at his deposition when he agreed that conduct such as that reported by the students justified discharging a teacher. *See* Aplee. Supp. App. at 16-17 (Ainsworth Dep. at 160:13 to 161:4). Moreover, Mr. Ainsworth has offered nothing that contradicts the fact that Ms. Metevelis and Ms. Price discussed the matter at some point and that Ms. Metevelis made the ultimate decision on November 16.

---

[3](...continued)

at 955. *Kimbro* concerned whether a supervisor's knowledge could be imputed to the company for purposes of a failure-to-accommodate claim where the supervisor had a company-mandated duty to communicate that knowledge to management. *See* 889 F.2d at 876-77. The relevant issue in *Breda* was whether a supervisor's knowledge that an employee has been sexually harassed can be imputed to an employer who has a policy directing employees to report harassment to their supervisor. *See* 222 F.3d at 889-90.

Mr. Ainsworth's final argument on the third prong of his prima facie case centers on the fact that he continued to receive assignments after Ms. Price's email to Ms. Ayers. He contends that those assignments, combined with the purported fact that he was not actually removed from the list of substitute teachers until after his December seizure, would permit a jury to find that he was not fired for the Haskell incident but because of his disability. This argument overlooks two facts that he has failed to place in dispute. First, Ms. Price did not give him assignments after November 16; those assignments were due to individual schools bypassing Ms. Price and obtaining substitutes directly. Second, the decision was made on November 16, before his December seizure.[4]

## C. Pretext

Despite finding that Mr. Ainsworth could not establish his prima facie case, the district court provided an alternate basis for its disposition, that Mr. Ainsworth could not establish pretext. "Pretext can be shown by such

---

[4] Mr. Ainsworth suggests that the temporal proximity between Ms. Price's awareness and her recommendation amount to affirmative evidence of discriminatory motive. But as we have explained in analyzing pretext related to a retaliation claim, "we have never allowed even very close temporal proximity [taken alone] to operate as a proxy for [a plaintiff's] evidentiary requirement" but instead require "temporal proximity *plus* circumstantial evidence of [discriminatory] motive"). *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1290 (10th Cir. 2007) (quotations omitted; first alteration and emphasis in original). As we have concluded that none of the circumstantial evidence to which Mr. Ainsworth points constitutes affirmative evidence of discrimination, the temporal proximity between the School District's awareness and the employment decision stands alone and is insufficient to carry his burden on the third prong of his prima facie case.

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan*, 108 F.3d at 1323 (quotations omitted). "'[A] plaintiff's prima facie case, combined with *sufficient evidence* to find that the employer's asserted justification is false, *may permit* the trier of fact to conclude that the employer unlawfully discriminated.'" *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)) (emphasis in *Young*).

The "nature and quantum of plaintiff's proof is key" because evidence that the employer's proffered nondiscriminatory reason is false "'will not *always* be adequate to sustain . . . liability.'" *Young*, 468 F.3d at 1250 (quoting *Reeves*, 530 U.S. at 148) (emphasis in *Reeves*). Thus, a plaintiff must present enough evidence to permit a factfinder to conclude, "'based on a preponderance of the evidence, that *discrimination was a determinative factor* in the employer's actions—simply disbelieving the employer is insufficient.'" *Id.* (quoting *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005) (emphasis in *Young*). In evaluating the sufficiency of the pretext evidence, we do not ask "whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."

-14-

*Rivera v. City and County of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) (quotation and alterations omitted). The relevant inquiry is how the facts appeared to the decision-maker, and a decision is not converted into pretext simply because it appears in hindsight to be a poor business judgment. *See id.* at 925. The courts do not "act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Young*, 468 F.3d at 1250 (quotation omitted).

Most of Mr. Ainsworth's pretext argument concerns inconsistencies in accounts given by Ms. Metevelis, Ms. Emerson, and five of the students that were in the Haskell class on November 15 concerning Mr. Ainsworth's alleged conduct that day. The inconsistencies concern minor details of the alleged conduct or variations in characterizing it and were given well after the conduct was reported by Ms. Ayers. As such, the inconsistencies are immaterial—they do not suggest that the employment decision was not made in good faith and on an honestly held belief arising from the conduct reported in Ms. Ayers's email. Moreover, inconsistencies between the students' recollections, which were given nearly four years after the incident, are not germane to the pretext analysis because the students did not make the decision, the School District did. We conclude therefore that the School District's proffered reason is not "so weak that a rational factfinder could infer that [the School District's] expressed reason for terminating [Mr. Ainsworth] must have been pretextual." *Rivera*, 365 F.3d at 925. Again,

-15-

Mr. Ainsworth admitted that conduct such as Ms. Ayers reported would be grounds for discharging a teacher. Aplee. Supp. App. at 16-17 (Ainsworth Dep. at 160:13 to 161:4).

Mr. Ainsworth also contends that the School District did not follow its policy of investigating allegations of substitute misconduct. In support, he cites to the notes compiled by an OHRC investigator during an interview with Ms. Price in which she reportedly stated that a principal "usually" gets corroboration from the students before asking her not to assign the substitute teacher to the school again. *See* Aplt. App., Vol. I at 165. We have recognized that "[a]n employer's failures to follow written or unwritten policy may support a showing of pretext, particularly if other similarly-situated employees were treated differently." *Campbell*, 478 F.3d at 1291. Assuming that the notes are an accurate rendition of a statement Ms. Price actually made, the statement of what is "usually" done hardly amounts to evidence of a policy concerning investigations of alleged substitute misconduct, the violation of which might suggest pretext. Nor has Mr. Ainsworth provided any evidence that similarly-situated employees were treated differently than him. Whether or not Principal Tucker should have spoken with the students in Ms. Emerson's class before reporting the allegations to Ms. Price, therefore, is a matter of business judgment that we will not revisit. *See Young*, 468 F.3d at 1250. So, too, is the

question of whether Ms. Price or Ms. Metevelis should have conducted further investigation.

On this same point, Mr. Ainsworth also directs us to a statement in Ms. Metevelis's letter to the OHRC investigator—that the School District removed Mr. Ainsworth from the list of substitute teachers after an investigation. This statement does not suggest pretext because it is accurate—Ms. Emerson and Principal Tucker did investigate, just not as thoroughly as Mr. Ainsworth would have liked. And the alleged inadequacy of the investigation does not convert the proffered basis for the employment decision into pretext for discrimination.

Finally, Mr. Ainsworth takes issue with the district court's finding that any alleged failure to engage in the interactive process did not show pretext. The interactive process generally begins when an employee provides notice of his disability to his employer and "express[es] a desire for reassignment if no reasonable accommodation is possible in the employee's existing job." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171-72 (10th Cir. 1999). Arguably, Mr. Ainsworth provided notice of his disability to the School District on two occasions— in October 2001 when he reported his dizziness to Ms. Price and in December when he had a seizure while on an assignment.[5] But he has not

_____

[5]     We agree with the district court that the students' complaints about the incident at Haskell Middle School were "so completely unrelated to [his] physical impairments as to provide no notice whatsoever to the School District that it
                                                                                    (continued...)

-17-

suggested, and the record does not reflect, that he ever expressed the requisite desire for reassignment after either incident. Thus, the School District's obligation to engage in the interactive process was never triggered; consequently, the purported failure cannot show pretext. Furthermore, any alleged failure to engage in the interactive process after the December seizure is irrelevant to the reason the School District decided in November to remove him from the list of substitute teachers.[6]

**D. Failure to Accommodate Claim**

The final argument we discern in Mr. Ainsworth's briefs concerns the district court's conclusion that he had not pleaded a separate claim for failure to accommodate his disability. We agree with the district court. Although the initial pleading in this case contains the sentence, "Defendant did not at any time make an effort to engage in an interactive process to attempt to accommodate Plaintiff's disability," Aplt. App., Vol. I at 18, ¶ 17, a status report filed nearly six months later lists only one claim, wrongful discharge in violation of the ADA, *see id.* at 310. Furthermore, when asked at his deposition whether the School District failed to accommodate his impairment, he replied that "they did what they needed to do to enable me to do my duties as a substitute teacher." Aplee.

---

[5](...continued)
needed to engage in the interactive process." Aplt. App., Vol. I at 325.

[6]    For the same reasons stated in note four, *supra*, we reject Mr. Ainsworth's temporal-proximity argument with respect to his evidence of pretext.

Supp. App. at 38 (Ainsworth Dep. at 187:22-23); *see also id.* at 34, 35 (Ainsworth Dep. at 183:4-11, 184:13-15) (answering that there was no time when the School District failed to assist him and that he was not asserting a claim for failure to accommodate his disability).

Even if the status report and Mr. Ainsworth's admissions do not fatally undermine any failure-to-accommodate claim that he may have raised in his initial pleadings, he failed to exhaust his administrative remedies as to the claim. The district court did not address this issue, but "[w]e may affirm the district court for any reason supported by the record." *Baca*, 398 F.3d at 1216 (quotation omitted).

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge . . . ." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). The only reference in Mr. Ainsworth's charge of discrimination that could be treated as a failure-to-accommodate claim is the bare statement that "[i]n or around December 2001, I was sick due to my disability while substitute teaching at Sequoyah Middle School." Aplee. Supp. App. at 41. There is no allegation that the School District failed to accommodate him on that or any other occasion. Instead, he references only his discharge. The OHRC's case summary does not discuss accommodation at all—it is limited to Mr. Ainsworth's discharge, indicating that the OHRC did not treat his charge as setting forth a

-19-

failure-to-accommodate claim. Accordingly, assuming Mr. Ainsworth asserted such a claim in this action, we conclude that he failed to exhaust his administrative remedies and therefore the district court lacked subject matter jurisdiction over it. *See McKenzie*, 414 F.3d at 1274 (administrative exhaustion of ADA claims is jurisdictional prerequisite to suit in federal court).

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge