**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STEVEN R. WILLIAMS,

     Plaintiff - Appellant,

v.

FEDEX CORPORATE SERVICES, a
Delaware corporation; AETNA LIFE
INSURANCE COMPANY, a Connecticut
corporation,

     Defendants - Appellees.

No. 16-4032

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:13-CV-00037-TS)**
_____

D. Scott Crook, D. Scott Crook Law, PC, Salt Lake City, Utah, for Plaintiff - Appellant.

Patrick Daniel Riederer (Carl K. Morrison and Ashley Satterfield Patterson with him on the brief), Federal Express Corporation, Memphis, Tennessee, for Defendants - Appellees.
_____

Before **HOLMES**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

Steven Williams alleges that his former employer, FedEx Corporate Services,

violated the Americans with Disabilities Act (ADA) by discriminating against him based

on his actual and perceived disabilities, and by requiring his enrollment in the company's substance abuse and drug testing program. Mr. Williams further alleges that Aetna Life Insurance Company, the administrator of FedEx's short-term disability plan, breached its fiduciary duty under the Employee Retirement Income and Security Act (ERISA) when it reported to FedEx that Mr. Williams filed a disability claim for substance abuse. Both FedEx and Aetna filed motions for summary judgment, which the district court granted. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 2000e-5(j), we affirm in part, and reverse and remand in part.

## I.  BACKGROUND[1]

Mr. Williams began working for FedEx in 1989 and, with the exception of a two-year hiatus from 2000 to 2002, continued his employment with FedEx until 2014. In December 2010, FedEx realigned its sales territories. After a few months, Mr. Williams complained to his supervisor, Kevin Wilczynski, that the change doubled his workload. Mr. Wilczynski explained that Mr. Williams had a workload similar to other employees, that he needed to prioritize his responsibilities, and that further complaints would be unwelcomed. Mr. Wilczynski also began calling Mr. Williams "Mr. Secondary" because he thought Mr. Williams spent too much time on secondary sales accounts.

In May 2011, Mr. Wilczynski moved to another position and Michael Bautch took over as Mr. Williams's supervisor. Mr. Williams repeated to Mr. Bautch the complaint

---

[1] The parties dispute many of the facts surrounding Mr. Williams's claims. We have identified where disputes exist. But as required at summary judgment, we present the facts in the light most favorable to Mr. Williams, the nonmoving party. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005).

that the new sales territory was too big to manage. In response, Mr. Bautch berated Mr. Williams, told him to stop whining, and said he was "being a baby." Mr. Bautch also counseled that Mr. Williams had been spending too much time on sales calls not aligned with his territory.

At the time he sought help with his workload, Mr. Williams's duties included entering sales calls into a database known as iSell. But Mr. Williams did not record his calls in iSell from June 13 to August 25, 2011. Although Mr. Williams claimed he later attempted to enter the calls but had technical difficulties, iSell representatives could not identify any login attempts for Mr. Williams's account during the relevant period.[2] On September 9, 2011, Mr. Bautch emailed Mr. Williams to ask about the missing entries, but Mr. Williams did not respond.

As of September 16, 2011, Mr. Williams still had not recorded the missing calls or responded to Mr. Bautch. At this point, David Trease took over as Mr. Williams's supervisor and attempted to schedule an in-person meeting with him. Mr. Trease received no response until September 18, when Mr. Williams indicated through email that he had been in the emergency room and would be out of the office until September 21. On September 19, Mr. Bautch, Mr. Trease, and a human resources representative discussed Mr. Williams's failure to record his calls in iSell. They decided not to take disciplinary action at that time because Mr. Williams had applied for a sales position with FedEx Trade Network (FTN). Mr. Williams interviewed for the position, but he later withdrew

---

[2] The representatives explained that some login problems might be attributed to laptop hibernation or use of an employee ID number rather than a full username.

his application because Mr. Bautch allegedly threatened "to stop [Mr. Williams] from going to [FTN]" and took steps to follow through on this threat.

At the time Mr. Bautch and Mr. Trease were trying to talk with Mr. Williams about his iSell entries, Mr. Williams was experiencing symptoms related to withdrawal from prescribed pain medication. Mr. Williams started taking OxyContin in 2008 for chronic neck pain caused by a car accident. And he continued to take OxyContin for about two years until he visited a pain specialist who documented his chief complaint as "addiction to narcotics." The specialist diagnosed Mr. Williams with opioid dependency and prescribed Suboxone to replace the OxyContin.[3]

Mr. Williams continued taking Suboxone for about a year, but in fall 2011 he went to a pain clinic to taper his Suboxone use. On September 9, 2011—the day Mr. Bautch emailed about Mr. Williams's iSell entries—Mr. Williams visited his primary care physician "to discuss how to handle the side effects of Suboxone withdrawal." Mr. Williams went to the emergency room two days later, on September 11, and the next morning he requested a few sick days. Throughout the rest of September, Mr. Williams visited his doctor multiple times with reports of "continued concerns about Suboxone withdrawal symptoms" and requests for "continued followup of his withdrawal from prescribed narcotics."

On September 26, 2011, FedEx granted Mr. Williams a medical leave of absence. Mr. Williams's doctor later signed a Certification of Health Care Provider for

---

[3] Mr. Williams denies that he was dependent on OxyContin and that he was prescribed Suboxone for the purpose of treating dependency.

4

Employee's Serious Health Condition (Family and Medical Leave Act), which identified "chronic neck pain[ and] severe anxiety" as the conditions for which he sought leave.

On September 30, 2011, Mr. Williams called Aetna, the claims administrator for the Federal Express Corporation Short Term Disability Plan (the Plan), and initiated a claim for short-term disability benefits. During his conversation with Aetna's intake representative, Mr. Williams explained that he was requesting short-term disability benefits for work-related stress and anxiety. But he also told the representative that his withdrawal from Suboxone was currently preventing him from working.

The Plan provides up to twenty-six weeks of benefits for an "Occupational Disability," which includes "the inability of a Covered Employee, because of a medically-determinable physical impairment or Mental Impairment, to perform the duties of his regular occupation." But the Plan limits benefits to thirteen weeks for a "Chemical Dependency," defined as "the habitual or addictive use of alcohol or any controlled substance." Although Aetna approved Mr. Williams's claim, it determined he suffered from a "Chemical Dependency" and therefore authorized benefits for only thirteen weeks.

Shortly after Mr. Williams filed his claim under the Plan, Aetna notified FedEx that Mr. Williams had "filed a disability claim for alcohol or substance abuse." As a result, Mr. Trease instructed Mr. Williams to call People Help, the vendor that assists FedEx employees with substance abuse problems. Mr. Williams asked why he should contact People Help and clarified that he had taken medical leave for work-related stress. Indeed, Mr. Williams had begun seeing a counselor for "recent stress and anxiety issues

related particularly to his work environment," and the counselor diagnosed Mr. Williams with adjustment disorder.

In a November 9, 2011 letter to Mr. Williams, Mr. Trease explained that Aetna reported Mr. Williams's medical leave was "due to an alcohol/drug related illness." Enclosed with the letter was a copy of FedEx's Alcohol/Drug Free Workplace Policy (ADFWP), which states that "[e]mployees who seek assistance for drug/alcohol abuse will be subjected to return-to-duty-testing and placed in the Follow Up Testing Program for five (5) years." Mr. Trease also told Mr. Williams that Aetna's report triggered a mandatory referral to People Help, and warned that failure to comply is a violation of company policy that would result in his termination.

This letter upset Mr. Williams because he felt FedEx was threatening his job when he had not sought help for a drug-related illness. Even so, Mr. Williams reported to People Help, which provided him a letter stating he had "completed a substance abuse assessment which resulted in no current substance abuse/dependence diagnosis." Mr. Williams forwarded this letter to FedEx and Aetna, along with letters from his attorney and medical providers, asserting that Mr. Williams did not have a substance-abuse problem.

Despite these letters, FedEx determined its ADFWP applied based on Aetna's statement that Mr. Williams self-reported a drug-related illness. So, before Mr. Williams could return to work, he had to sign a Statement of Understanding, in which he "agree[d] to undergo a post treatment drug screen and/or alcohol test and have a negative test

6

before returning to work." FedEx also placed Mr. Williams in its follow-up drug testing program for five years, and required him to disclose his use of prescription medications.

While on leave, Mr. Williams further communicated with Aetna about his short-term disability benefits. As explained, Aetna determined Mr. Williams had a "Chemical Dependency" and originally approved benefits for only thirteen weeks. Aetna provided benefits for two extra weeks when Mr. Williams had neck surgery, but it terminated his benefits on December 26, 2011, based on authorization from his doctor that he could return to work on December 27, 2011. Mr. Williams appealed the discontinuance of benefits, but Aetna denied the appeal.

Mr. Williams returned to work in early February 2012. On February 23, 2012, FedEx issued a Letter of Counseling for Unacceptable Performance and Conduct that related back to Mr. Williams's failure to record calls in iSell the previous year. Mr. Williams continued to work at FedEx until he resigned approximately two years later, on March 31, 2014.

On February 23, 2015, Mr. Williams filed his Third Amended Complaint, the operative complaint in this case, in which he asserted six causes of action against FedEx and/or Aetna. As relevant here, Mr. Williams alleged that FedEx discriminated against him based on his disability in violation of the ADA, and that Aetna breached its fiduciary duty to him under ERISA. The district court granted summary judgment in favor of FedEx and Aetna on all claims on January 27, 2016.

7

## II.  DISCUSSION

Mr. Williams now appeals the district court's grant of summary judgment on his ADA discrimination claims against FedEx and his ERISA breach of fiduciary duty claim against Aetna. We address each claim below, reviewing the district court's grant of summary judgment de novo, and applying the same legal standard as the district court. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence and draw reasonable inferences in the light most favorable to Mr. Williams, the nonmoving party. *Bryant*, 432 F.3d at 1124.

### A.  *ADA Claims*

The ADA protects individuals with real or perceived "physical disabilities or mental impairments that substantially limit major life activities." *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013) (citing 42 U.S.C. § 12102(1)(C)). In the absence of direct evidence of discrimination, as is the case here, we apply the familiar *McDonnell Douglas* burden-shifting framework to claims under the ADA. *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011).

Under *McDonnell Douglas*'s three-part analysis, a plaintiff must first establish a prime facie case of ADA discrimination by proving "(1) he is disabled (or perceived as disabled) as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability." *Koessel*, 717 F.3d at 742. To "demonstrate 'discrimination,' a

8

plaintiff generally must show that he has suffered an adverse employment action because of the disability." *C.R. Eng.*, 644 F.3d at 1038 (internal quotation marks omitted). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* If the defendant does so, "the burden shifts back to the plaintiff to show that the defendant's stated reasons are merely 'pretextual.'" *Id.*

Mr. Williams asserts three ADA claims: a traditional ADA discrimination claim, a regarded-as disabled claim, and a disability-related inquiry claim. Mr. Williams first challenges the district court's ruling that he failed to present evidence supporting each element of his traditional and regarded-as ADA claims. He also argues the district court did not adequately address his disability-related inquiry claim. We address each claim in turn.

## 1. Traditional ADA Claim

Mr. Williams first claims that FedEx discriminated against him based on his actual disability, i.e., "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Mr. Williams maintains that he "ha[d] been diagnosed with severe anxiety and adjustment disorder," which "substantially limited [his] ability to sleep, concentrate, read, learn, work, and communicate." He asserts that FedEx took adverse employment action against him based on his disability in two ways. First, Mr. Williams alleges that FedEx refused to adjust his work schedule,

berated him, threatened his job, and interfered with his attempt to transfer to the FTN position.[4] Second, he insists that FedEx subjected him to a hostile work environment.

In granting summary judgment on this claim, the district court concluded (1) that there is no evidence linking FedEx's actions to Mr. Williams's anxiety or stress disorder; (2) that the evidence did not establish a hostile work environment; and (3) that even if Mr. Williams could establish a prima facie case of disability-based discrimination or hostile work environment, he failed to prove that FedEx's explanations for its actions were pretextual. We hold that the district court correctly concluded that Mr. Williams failed to establish a prima facie case of discrimination. Accordingly, we do not address whether Mr. Williams also failed to show pretext.

As an initial matter, Mr. Williams did not plead hostile work environment in his operative complaint as a separate claim. He instead asserts, without citation, that a hostile work environment can constitute an adverse employment action under the ADA. Even if we assume that is so for purposes of analysis only, we agree with the district court that Mr. Williams failed to submit sufficient evidence of a hostile work environment.

A plaintiff claiming hostile work environment "must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Fed. Home Loan*

---

[4] Mr. Williams also alleges that FedEx unlawfully placed him in the company's substance abuse program and required him to disclose his use of any prescription medications. These allegations relate to his other ADA theories, which are discussed later in this opinion.

10

*Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (citation omitted). General harassment alone is not actionable. *See Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). In examining whether a plaintiff has made the requisite showing, "we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted).

Here, even when viewed in the light most favorable to Mr. Williams, the evidence shows only the following:

- Mr. Williams's responsibilities increased significantly when FedEx realigned its sales territories;

- Mr. Williams repeatedly asked for help, but his requests were ignored or denied, and his supervisors "sarcastically belittled" and berated him, calling him "Mr. Secondary" and accusing him of whining and "being a baby";

- One supervisor, Mr. Bautch, threatened to prevent Mr. Williams from transferring to the new FTN position and took specific steps to do so;

- As a result of his job-related stress, Mr. Williams experienced exacerbation of his health conditions; and

- While Mr. Williams was on medical leave, his supervisors contacted him for failing to enter his sales calls in iSell and later disciplined him when he returned to work.

11

Taken together, the evidence does not demonstrate Mr. Williams was subject to a hostile work environment. At most, the evidence shows that Mr. Williams struggled under a heavy workload, that he received no relief when he asked for help, and that he experienced mistreatment by and disciplinary action from his supervisors. While Mr. Williams's allegations show he faced adversity in the workplace, we cannot say that these circumstances created an atmosphere sufficiently severe to qualify as being "permeated with discriminatory intimidation, ridicule, and insult." *Penry*, 155 F.3d at 1261 (citation omitted).

Further, even if we assume Mr. Williams proved that FedEx took adverse action against him based on discrete acts or on a hostile work environment, Mr. Williams still cannot prove the third element necessary to establish a prima facie case of discrimination. Whether a plaintiff attempts to prove discrimination based on discrete acts taken by an employer or based on a hostile work environment, he must produce evidence from which a rational jury could conclude the employer took those actions *because of* his disability. *See MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005); *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004).

But here, there is no evidence that FedEx's conduct was based on Mr. Williams's disability. Nothing in the record indicates that anyone at FedEx even knew about Mr. Williams's severe anxiety and adjustment disorder until he objected to placement in FedEx's drug testing program on the ground his medical leave was for those medical conditions, and not for substance abuse. Indeed, most of FedEx's conduct on which Mr. Williams relies occurred before this disclosure. ADA liability cannot be based on actions

12

taken when FedEx was unaware of Mr. Williams's disability. *See C.R. Eng.*, 644 F.3d at 1049 ("[T]he employer must know of both the disability and the employee's desire for accommodations for that disability." (citation omitted)); *Ainsworth v. Indep. Sch. Dist. No. 3*, 232 F. App'x 765, 771 (10th Cir. 2007) (unpublished) ("[W]e have held that an employer must know of a disability before it can be held liable under the ADA.").

The only relevant action occurring after Mr. Williams disclosed his anxiety and adjustment disorder was FedEx's disciplinary letter resulting from his earlier failure to complete iSell entries. But Mr. Williams produced no evidence suggesting that FedEx issued this letter because it learned about his anxiety and adjustment disorder.

To the contrary, Mr. Williams testified at his deposition that he did not believe FedEx took adverse employment action against him because of his disability:[5]

> Q.    And how is [Mr. Bautch's interference with two promotion opportunities] related to your condition of severe anxiety and adjustment disorder?
>
> A.    It just completely exacerbated it.
>
> Q.    Okay. But do you think that Mr. Bautch interfered with those opportunities because you had a severe anxiety and adjustment disorder?
>
> A.    No.
>
> . . .
>
> Q.    Do you think that FedEx required you to [participate in drug testing] because you had severe anxiety and adjustment disorder?

---

[5] Of course, Mr. Williams's subjective assessment of the situation is not dispositive. But his testimony does at least reinforce our conclusion.

A. I think it's because of them abusing their powers to put me into a drug screening program.

. . .

Q. . . . Do you think that FedEx refused to accommodate you because you had severe anxiety and adjustment disorder?

A. No.

Q. Do you think that FedEx verbally berated you because you had severe anxiety and adjustment disorder?

A. No.

Q. And do you think that FedEx threatened your job because you had severe anxiety and adjustment disorder?

A. No.

The district court correctly concluded that Mr. Williams failed to produce evidence from which a reasonable jury could find that FedEx discriminated against him *because of* his disability. As a result, Mr. Williams cannot establish a prima facie case for his traditional ADA claim. We accordingly affirm the district court's grant of summary judgment on this claim.

## 2. Regarded-As Disabled Claim

Mr. Williams also claims that FedEx erroneously regarded him as a drug addict and discriminated against him on that basis.[6] In addition to protecting individuals from discrimination based on their actual disabilities, the ADA protects individuals who are

---

[6] Although FedEx argues that Mr. Williams did not adequately raise a regarded-as claim before the district court, Mr. Williams asserted this claim in his Third Amended Complaint and again in opposition to FedEx's motion for summary judgment.

"regarded as" having "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A), (C); *see Koessel*, 717 F.3d at 742. As relevant here, an individual may be regarded as disabled if he "is erroneously regarded as having engaged in [illegal use of drugs], but is not engaging in such use." 42 U.S.C. § 12114(b)(3); *see also Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 610 (10th Cir. 1998) ("[T]he ADA protects employees who are erroneously regarded as being current illegal drug users.").

The district court granted summary judgment on Mr. Williams's regarded-as claim because Mr. Williams produced no evidence that FedEx took adverse action against him *because of* his perceived disability. Although for different reasons, we conclude the district court correctly granted summary judgment on this claim. *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir. 1994) ("We may affirm summary judgment on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result." (Internal quotation marks omitted)).[7]

---

[7] Before the district court, "FedEx d[id] not dispute that Mr. Williams was disabled under the ADA or that he was qualified with or without reasonable accommodation to perform the essential functions of his job." FedEx limited its argument to "disput[ing] . . . that it discriminated against [Mr. Williams] because of his disability." FedEx now argues that this concession moots Mr. Williams's regarded-as arguments. But FedEx misconceives Mr. Williams's claims. Although Mr. Williams's traditional ADA claim is based on his actual disability (i.e., his anxiety disorder), his regarded-as claim is based on a perceived disability (i.e., an erroneous perception that he was addicted to drugs). Because the disabilities differ for the two claims, the causation analysis for each is also distinct. And FedEx's concession on the first two elements of the traditional ADA claim does not necessarily moot the elements of the regarded-as claim. As a result, we must analyze whether Mr. Williams presented evidence to support the remaining elements of his regarded-as claim based on FedEx's allegedly erroneous perception that he was addicted to drugs.

15

Upon receiving notice from Aetna that Mr. Williams filed a disability claim for substance abuse, FedEx required Mr. Williams to pass a drug test before he could resume work and required him to remain in the company's drug testing program for five years. We assume without deciding that these actions constitute adverse employment actions and that FedEx took these actions because it regarded Mr. Williams as having a substance abuse problem. And so, we assume for the purpose of our discussion that Mr. Williams established a prima facie case of discrimination.

The *McDonnell Douglas* framework next requires FedEx to assert a legitimate, nondiscriminatory reason for its actions. *See C.R. Eng.*, 644 F.3d at 1038. FedEx states that it took those actions because its policies require mandatory enrollment in drug testing if an employee seeks treatment for drug or alcohol abuse, and Aetna reported that Mr. Williams had taken leave due to an alcohol- or drug-related illness. FedEx has satisfied its "exceedingly light" burden to articulate a legitimate, nondiscriminatory reason. *See id.* at 1043.

The burden now shifts back to Mr. Williams to prove by a preponderance of the evidence that FedEx's proffered reason was pretextual. *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1211 (10th Cir. 2010). "A plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." *C.R. Eng.*, 644 F.3d at 1038–39 (internal quotation marks omitted).

Mr. Williams maintains that FedEx's proffered reason is pretext because he sought disability benefits for his stress and anxiety—not for a chemical dependency or substance

16

abuse—and thus his placement in the drug testing program had to be discriminatory. Mr. Williams cites the letters from his medical providers stating he did not have an addiction problem, People Help's report and recommendation of no substance abuse diagnosis or treatment, and Aetna's claim manager's deposition testimony that "[t]here was nothing in the file that said there was a substance abuse problem." Mr. Williams also cites his testimony that he "expressed several times that [he] was requesting short-term disability officially because of stress and anxiety due to abuse at work." Mr. Williams argues this evidence shows that he "had only been suffering from withdrawal from the physical dependence that occurs when a person is prescribed and is taking Suboxone," and not that he was a substance abuser.

Mr. Williams focuses on the accuracy of Aetna's report and on whether he was in fact drug dependent. But "our role isn't to ask whether the employer's decision was wise, fair or correct." *Johnson*, 594 F.3d at 1211 (internal quotation marks omitted). Rather, "we are only concerned with whether [FedEx] held a good-faith belief" when it took its actions. *C.R. Eng.*, 644 F.3d at 1044. And Mr. Williams has not come forward with any evidence from which a reasonable jury could find that FedEx lacked such a belief. Aetna informed FedEx that Mr. Williams suffered from substance abuse. FedEx then acted on its good-faith belief that Mr. Williams in fact suffered from substance abuse when it placed him in its drug testing program. Nothing suggests FedEx acted with an ulterior motive; it merely enforced a policy that applies universally to all employees who seek assistance for drug or alcohol abuse. Although Mr. Williams insists Aetna erroneously stated he suffered from substance abuse, we are concerned here only with FedEx's

17

conduct, not Aetna's. There is nothing to suggest that FedEx did not act in good-faith reliance on Aetna's statement.

Mr. Williams cannot prove pretext. As a result, summary judgment was appropriate on his regarded-as disabled claim.

### 3. Disability-Related Inquiry Claim

Mr. Williams further contends the district court erred when it did not address his claim that FedEx unlawfully required medical examinations and made disability-related inquiries. The ADA provides:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). A plaintiff asserting a claim under § 12112(d)(4)(A) must show (1) that he is an employee of the defendant-employer, and (2) that the defendant-employer required him to undergo a medical examination or made a disability-related inquiry of him. *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997). The provision applies to all employees, and a plaintiff need not prove that he is disabled. *Id.* Even if the plaintiff makes the required showing, the employer may avoid liability by demonstrating that the medical examination or disability-related inquiry was job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A).

Mr. Williams asserts that FedEx violated § 12112(d)(4)(A) when it required him to submit to monthly drug tests and to disclose his use of legally prescribed medications.

18

To be sure, a test for "illegal use of drugs" is not considered a medical examination under the ADA. *Id.* § 12114(d)(1). But FedEx appears to have done more than merely subject Mr. Williams to mandatory drug testing. Mr. Williams alleged in his operative pleading that FedEx required him to disclose his use of legally-prescribed medications. And we have recognized that requiring disclosure of prescription drugs may violate § 12112(d)(4)(A). *See Cheyenne Mountain Conference Resort*, 124 F.3d at 1230 (agreeing with the district court that an employer's policy violated the ADA to the extent it required prescription drug disclosures from employees); *accord Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1215–16 (11th Cir. 2010) (reversing summary judgment for employer on ADA improper medical inquiry claim where employer required employee to provide his prescription medication after he failed a drug test).

The district court, however, did not address whether FedEx improperly required Mr. Williams to disclose his use of legally-prescribed prescription drugs. On that basis, we reverse in part the grant of summary judgment in FedEx's favor, and we remand to allow the district court to address Mr. Williams's § 12112(d)(4)(A) claim in the first instance. *See Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993) (stating that generally an issue must be presented to and decided by the district court before we will pass on it); *Thompson v. Robison*, 580 F. App'x 675, 677 (10th Cir. 2014) (unpublished) (declining to address the merits of a claim in the first instance on appeal). On remand, the district court should evaluate whether there exists a genuine issue of fact for trial concerning Mr. Williams's allegation that FedEx improperly required him to disclose his use of prescription drugs. In undertaking this analysis, the district court

19

should consider whether FedEx implemented its purported disclosure requirement to learn whether Mr. Williams was suffering from any health defects, or for some other business purpose. *See Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566, 576 (6th Cir. 2014) (noting that "[t]he uncovering of health defects at an employer's direction is the precise harm that § 12112(d)(4)(A) is designed to prevent" (internal quotation marks omitted)); *see also id.* at 574–75, 578–79 (identifying factors relevant to determining whether an employer improperly imposed a medical examination or made a disability-related inquiry).

FedEx maintains that, even if its purported disclosure requirement amounts to an impermissible medical examination or disability-related inquiry, Mr. Williams's claim fails for four reasons. We here reject FedEx's first three offered reasons, but we reserve analysis of FedEx's final argument for the district court to address in the first instance on remand.

FedEx first argues that employers may prohibit illegal drug use without offending the ADA. *See* 29 C.F.R. § 1630.3(a) ("The terms disability and qualified individual with a disability do not include individuals currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."). Yet FedEx concedes that "[t]he record [i]s devoid of any facts supporting the inference that FedEx regarded [Mr.] Williams as an 'illegal drug user.' Quite to the contrary, and from the beginning, FedEx acknowledged that [Mr.] Williams was lawfully prescribed Suboxone." FedEx's argument that Mr. Williams falls outside the protection of § 12112(d)(4)(A) fails because the "illegal drug use" that would exempt an employee from the protections of the ADA

20

"does not include the use of a drug taken under the supervision of a licensed health care professional." *See* 29 C.F.R. § 1630.3(a)(2).

Second, FedEx maintains that Mr. Williams agreed to participate in the drug testing program. The evidence, however, does not support an inference that he voluntarily enrolled in the program. Before Mr. Williams could return to work, FedEx required him to sign a Statement of Understanding, which required his participation in the drug testing program. A reasonable jury could infer that he signed the document only because his job was threatened, not because he simply agreed to participate. At most, a fact issue exists about whether FedEx required participation in the drug testing program as a condition of Mr. Williams's continued employment. We cannot affirm a grant of summary judgment on this basis.

Third, FedEx argues Mr. Williams admitted in his deposition that his disability-related inquiry claim was based on conduct by eScreen, a separate defendant dismissed earlier in the course of the case. But the record does not support this position. Although Mr. Williams testified about alleged misconduct by eScreen, Mr. Williams's complaint specifically asserts an ADA claim against FedEx, alleging that FedEx required medical examinations in violation of § 12112(d)(4)(A). Mr. Williams also presented evidence that FedEx required his enrollment in the drug testing program as a condition of his continued employment with FedEx. And when Mr. Williams complained about the way in which eScreen conducted the drug tests, FedEx called eScreen to ensure future tests were conducted following a different protocol. Mr. Williams thus presented evidence to create a dispute about whether FedEx required and directed the relevant medical examinations.

21

Finally, FedEx insists it cannot be liable even if it required medical examinations and made disability-related inquiries because it had a legitimate business reason for doing so. An employer is liable for an improper medical examination or inquiry, "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). We have recognized that "courts will readily find a business necessity if an employer can demonstrate that a medical examination or inquiry is necessary to determine whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties." *Adair v. City of Muskogee*, 823 F.3d 1297, 1312 (10th Cir. 2016) (internal quotation marks omitted). FedEx argues that it satisfies the business necessity exception because its ADFWP and drug testing program "ensure[] that employees who seek assistance for drug abuse or dependencies are no longer abusing the drug if they return to FedEx." Even though FedEx asserted this argument below, the district court did not address it. As a result, we do not have an adequate record from which we can decide this issue on appeal. We reverse and remand to allow the district court to address this claim in the first instance.

## B. *ERISA Breach of Fiduciary Duty Claim*

We now turn to Mr. Williams's claim that Aetna breached its fiduciary duty under ERISA. A fiduciary like Aetna must "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like

22

character and with like aims." 29 U.S.C. § 1104(a)(1)(B). A fiduciary must also provide complete and accurate information. *See Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999).

Mr. Williams contends Aetna breached its duty (1) when it determined that he suffered from a Chemical Dependency; and (2) when it reported to FedEx that he had a substance abuse problem, and then failed to correct its report to FedEx that he had filed such a claim.[8] The district court concluded that Aetna did not act arbitrarily or capriciously. We agree.

First, Mr. Williams maintains that he did not suffer from a Chemical Dependency as defined in the Plan. This claim does not appear to be a breach of fiduciary duty claim, but instead an attempt to challenge Aetna's benefits determination. Even if we assume Aetna's benefits determination can give rise to a fiduciary duty claim, we conclude the claim here fails.

"Where [an ERISA] plan gives the administrator discretionary authority, . . . we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (internal quotation marks omitted). The district court applied this standard in its review of Aetna's conduct, and the parties agree it applies here.

---

[8] Mr. Williams also appeals the district court's conclusion that Aetna owed fiduciary duties only to the Plan and not to Mr. Williams individually. Aetna does not dispute that it owed a fiduciary duty to Mr. Williams individually. Accordingly, we need not address the issue.

Under the Plan, employees may receive up to twenty-six weeks of short-term disability benefits for an "Occupational Disability" but only thirteen weeks for a "Chemical Dependency." A Chemical Dependency is "the habitual or addictive use of alcohol or any controlled substance." Aetna approved Mr. Williams's short-term disability claim, but it provided him benefits for only thirteen weeks pursuant to a finding of Chemical Dependency. Mr. Williams contends that Aetna acted arbitrarily and capriciously when it did so because he filed a claim for stress and anxiety, not for a condition qualifying as a Chemical Dependency. Indeed, Mr. Williams notes, he told Aetna about his stress and anxiety when he first made his claim.

But Mr. Williams overlooks that he also told Aetna that "he was in the process of suffering from withdrawal from legally prescribed Suboxone." And he ignores that his medical records—which he provided to Aetna—show that in the weeks preceding his call to Aetna, he visited multiple medical providers to whom he expressed concerns about Suboxone withdrawal. These pre-claim medical records do not refer to stress or anxiety at all.

In the end, Aetna provided Mr. Williams benefits for only thirteen weeks because his medical records showed complaints relating only to his withdrawal from Suboxone, and because he self-reported that he had been struggling with symptoms of withdrawal. These records, and Mr. Williams's own report, reasonably indicate that he was engaged in "the habitual or addictive use" of Suboxone and therefore suffered from a "Chemical Dependency" as defined in the Plan. That Mr. Williams's doctor later signed an FMLA form in which he identified "chronic neck pain[ and] severe anxiety" as the "condition[s]

24

for which the employee seeks leave" does not render Aetna's finding of Chemical Dependency arbitrary or capricious.

Second, Mr. Williams argues there is a genuine dispute of fact concerning whether Aetna breached its fiduciary duty by reporting to FedEx that Mr. Williams filed a claim for substance abuse, and by later failing to correct its report. The parties again agree that an arbitrary and capricious standard applies to our review of this issue.

FedEx's ADFWP provides, "[t]he disability vendor [Aetna] will notify [FedEx] when an employee seeks benefits for substance abuse."[9] "Substance abuse" in the policy includes the use of prescription drugs, and Mr. Williams indisputably experienced withdrawal of prescribed Suboxone. So, when Aetna concluded that Mr. Williams suffered from a Chemical Dependency in the form of Suboxone withdrawal, it had a duty under the ADFWP to report his condition to FedEx. Compliance with FedEx's policy cannot constitute a breach of fiduciary duty.

To be sure, Aetna received a letter from People Help stating it had not diagnosed Mr. Williams with substance abuse. But when Aetna first reported to FedEx, Aetna did not have the People Help letter. Rather, Aetna had Mr. Williams's own report and his medical records that repeatedly identify and describe his Suboxone withdrawal. Mr. Williams also agreed in his deposition that Suboxone withdrawal was one of the medical conditions preventing him from working. In view of the evidence supporting its decision,

---

[9] The version of the ADFWP in the record does not include the language quoted in the sentence preceding this footnote. It appears we may have a redacted copy of the policy. But in its motion for summary judgment and in its brief on appeal, Aetna quoted the language above, and Mr. Williams has not argued that the quotes are inaccurate.

Aetna did not provide inaccurate information when it reported to FedEx or when it declined to change its report upon receiving additional information about Mr. Williams's condition.

Mr. Williams has not established that Aetna failed to act with the care required by ERISA fiduciaries. The district court correctly granted summary judgment on this claim.

### C. *Motion to Seal*

Finally, Mr. Williams moved to file under seal Volumes III through XXXI of the Appendix. We initially denied the motion without prejudice because Mr. Williams failed to include "a statement of the opposing party's position on the relief requested or why [he] was unable to learn the opposing party's position." 10th Cir. R. 27.1. Mr. Williams then filed an unopposed renewed motion. The Clerk of Court provisionally granted the motion, subject to our plenary consideration. But the Clerk later ordered the parties to file a joint response showing cause why the district court's summary judgment order should remain under seal in this court, and why Mr. Williams should not be required to file an amended appendix and to narrow his sealing request to only those documents containing private medical information that cannot reasonably be redacted. It is the parties' joint response to which we direct our attention.

"A party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right of access to judicial records." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011). The moving party "must articulate a real and substantial interest that justifies

26

depriving the public of access to the records that inform our decision-making process."

*Id.* at 1135–36 (internal quotation marks omitted).

The parties agree in their joint response that the district court's order should not remain under seal, but that Mr. Williams should not be required to submit an amended appendix or to narrow the scope of his sealing request. They note that many of the 1,346 record pages Mr. Williams seeks to keep under seal include documents that had been marked and filed as sealed under the district court's standard protective order. But we are "not bound by the district court's decision to seal certain documents below." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012). And more importantly, Mr. Williams admits he made no effort to identify the subset of documents within those sealed that actually include confidential information, or to redact private information where it reasonably could be done. Mr. Williams simply seeks to seal all documents that might include confidential information. Mr. Williams has not met his burden to articulate a real and substantial interest overcoming the presumption in favor of public access.

Undoubtedly, many of the documents Mr. Williams seeks to file under seal include his medical records and/or FedEx's confidential information. It is also true that we have granted motions to seal medical records and internal confidential business records in other instances. *See, e.g.*, *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 n.1 (10th Cir. 2008). But the parties agree that the district court's protective order is overbroad, and yet they fail to identify the specific portions of the record that are appropriately sealed. They also agree that the district court's summary judgment order may now be unsealed, even though the order describes and even quotes in

27

it much of the information Mr. Williams now seeks to keep under seal. Under these circumstances, and in view of the high standard to seal court documents, there is little justification to keep the remaining documents sealed.

We deny Mr. Williams's motion, and order that the Appendix be unsealed twenty days from the date of this decision, unless the parties submit an amended, unsealed Appendix within fourteen days from the date of this decision. The amended Appendix, if filed, may redact Mr. Williams's medical information that was not already disclosed in the appellate briefs or the district court's order, and any identifying information concerning individuals who are not involved in this litigation. If the parties elect to file an amended Appendix, they shall share the cost of redacting the information and of refiling it.

### III.  CONCLUSION

For the reasons stated, we AFFIRM in part but REVERSE the grant of summary judgment on Mr. Williams's claim under 42 U.S.C. § 12112(d)(4)(A). We also DENY Mr. Williams's request for attorney fees under 42 U.S.C. § 12205 and 29 U.S.C. § 1132(g)(1), and his motion to seal the record. We remand to the district court for further proceedings consistent with this opinion.