**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 27, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

WILLIAM OSCAR WARD,

    Plaintiff - Appellant,

v.

WESLEY MEDICAL CENTER, LLC;
HCA HEALTH CARE, INC.,

    Defendants - Appellees.

No. 25-3107
(D.C. No. 6:23-CV-01091-HLT)
(D. Kan.)

_____

**ORDER AND JUDGMENT\***
_____

Before **PHILLIPS**, **EID**, and **FEDERICO**, Circuit Judges.
_____

William Oscar Ward appeals the district court's entry of summary

judgment in favor of his former employer, Wesley Medical Center, LLC, and

its holding company, HCA Health Care, Inc. (collectively, "Wesley"), on his

---

\* After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist in
the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument.

This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Federal Rule
of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

pro se action claiming discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12117 (ADA), and the Family Medical Leave Act, 29 U.S.C. § 2615(a) (FMLA). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

This case stems from a workplace dispute over who invented a cleaning tool for sprinkler heads at Wesley. Ward says he invented the tool, and in March 2021, he made several complaints that two other employees—Darryl Boger, a Refrigeration Tech at Wesley, and Brian Leabo, Wesley's Director of Facilities Management—were taking credit for his invention. Shortly thereafter, on April 15, 2021, Ward sought treatment for anxiety.

Ward sought to take leave from work, and because Wesley does not directly handle leave requests, he contacted Wesley's third-party leave administrator, "Time Away From Work" (TAFW), which is a separate entity. R. at 188, ¶14. TAFW communicates directly with the employee and only shares with Wesley "information regarding an employee's request for leave, whether that request is approved or denied, and, if approved, for how long, and when the employee is released to return to work." *Id.*

Ward requested leave beginning April 12 through April 20, 2021. He was granted leave until April 20, which was extended until May 2. He was cleared to return to work on May 3, but he did not return to work on May 3.

2

On May 5, 2021, Vice President of Human Resources, Lisa Clark, emailed Ward requesting a meeting. He did not respond, so on May 7 she emailed him again to request a meeting on May 10. She advised him that if he failed to report for the meeting, he would be considered separated from employment. Ward responded to Clark that same day, indicating his new return-to-work date would be May 24. Ward's therapist submitted documents to TAFW that same day as well, supporting a request for leave through May 23. R. at 168. TAFW approved the request through May 23 and advised Ward, "If your leave request is for your own serious health condition, and you would like to discuss an accommodation in addition to this request for leave, please contact your facility's Human Resources department as soon as possible." *Id.* at 280. But Ward did not contact Clark.

On May 12, Clark emailed Ward advising him that she did not receive any documentation to support extending his leave beyond May 3 and if he did not meet with her on May 14, he would be terminated. Ward failed to meet with Clark on May 14, so on June 18, after he depleted most of his FMLA leave, Clark notified Ward's supervisors he would be on protected leave until July 5, when he would exhaust his FMLA leave. *Id.* at 919. Then, on July 7, Clark emailed Ward once again, directing him to contact her by July 12 or he would be administratively separated from his employment. Still, Ward did not respond, and on July 15, 2021, Clark terminated him.

Ward filed suit, claiming discrimination under the ADA and retaliation under both the ADA and the FMLA.[1] During discovery, the district court repeatedly stayed the case and extended deadlines to accommodate Ward's mental health. Eventually, the parties filed cross-motions for summary judgment. Ward's summary judgment briefing discussed two additional claims, a failure-to-accommodate claim and an FMLA interference claim, but the district court limited him to the claims set forth in the pretrial order. The district court also determined that he failed to comply with Fed. R. Civ. P. 56(c) and local court rules because his summary judgment response did not address Wesley's facts or set out separately numbered facts in dispute. It thus deemed Wesley's recitation of facts admitted and limited Ward to the stipulated facts in the pretrial order. Based on those facts and claims, the district court granted summary judgment to Wesley, ruling Ward failed to establish causation. The district court reasoned that he produced no evidence that he was harassed because of his anxiety, or that he was retaliated against because of his anxiety or because he took FMLA leave.

---

[1] Ward asserted a separate claim for "FMLA Enforcement," alleging his "employment was adversely affected by his requests for leave." R. at 176 (pretrial order); *see also id.* at 23 (compl., ¶ 31). The district court construed this claim as synonymous with the FMLA retaliation claim. *See id.* at 962 n.8.

4

## II

We review de novo the district court's summary judgment ruling, applying the same standards as the district court. *United States v. Dep't of Health & Env't*, 162 F.4th 1238, 1247 (10th Cir. 2025). "A motion for summary judgment shall be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "When reviewing cross-motions for summary judgment, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made . . . ." *Id.* (internal quotation marks omitted).

We afford Ward's pro se materials a liberal construction but do not advocate on his behalf. *See Adams v. Fed. Aviation Admin.*, 168 F.4th 1271, 1275 n.1 (10th Cir. 2026). We do not consider arguments that were not adequately presented in the appellant's opening brief. *Bronson v. Swenson*, 500 F.3d 1099, 1104 (10th Cir. 2007).

## A

As a preliminary matter, Ward says the district court abused its discretion in denying several of his motions to stay proceedings and extend various discovery and other deadlines to accommodate his mental health. *See Bolden v. City of Topeka*, 441 F.3d 1129, 1149 (10th Cir. 2006)

5

(reviewing order on discovery extension for abuse of discretion); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) (reviewing ruling on motion to stay proceedings for abuse of discretion). By our count, however, the district court stayed proceedings and extended deadlines no less than nine times. It also converted an in-person hearing to a telephone conference and attended Ward's deposition to reduce his anxiety. Although the district court did not grant all of Ward's requests, the record confirms it acted well within its discretion to accommodate his mental health while also moving the case toward resolution. *See Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1227 (10th Cir. 2011) (describing "an abuse of discretion as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment" (internal quotation marks omitted)).

## B

We next consider Ward's contentions that the district court improperly relied on the pretrial order to define the scope of the litigation. In particular, he says the district court abused its discretion in declining to consider the newly raised failure-to-accommodate and FMLA interference claims, neither of which were included in the pretrial order because they were not pleaded in the complaint or raised during the pretrial conferences. He also says the district court abused its discretion by limiting his evidence to stipulated facts in the pretrial order. We reject both contentions.

"The . . . pretrial order measures the dimensions of the lawsuit, both in the trial court and on appeal." *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003) (internal quotation marks omitted). Although "a pretrial order should be liberally construed to cover any of the legal or factual theories that might be embraced by its language," *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000) (brackets and internal quotation marks omitted), the district court does not abuse its discretion by excluding issues and claims omitted from the pretrial order, *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991). "Claims, issues, defenses, or theories of damages not included in the pretrial order are waived." *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1277 (10th Cir. 2006) (brackets and internal quotation marks omitted).

Ward faults the district court for refusing to consider his two additional claims, but he did not discuss those claims until summary judgment. By that time, though, discovery was complete, the pretrial order had been drafted, and Wesley had filed its summary judgment motion – all without notice that Ward was considering failure-to-accommodate and FMLA interference claims. Under these circumstances, the district court did not abuse its discretion in limiting the litigation to the claims set forth in the pretrial order.

7

Ward also disputes the district court's refusal to consider facts beyond those stipulated in the pretrial order. The district court did not consider Ward's additional evidence because his summary judgment briefing failed to comply with Federal Rule of Civil Procedure 56(c) and the district court's local rules. We review for abuse of discretion and perceive none. *See Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 894 (10th Cir. 1997) (reviewing exclusion of evidence at summary judgment for abuse of discretion).

Fed. R. Civ. P. 56(c)(1) states, "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." The district court's local rules also require that a brief opposing summary judgment contain "a concise statement of material facts as to which the party contends a genuine dispute exists." D. Kan. Rule 56.1(b)(1). "Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed." *Id.*

Ward failed to comply with these requirements. Although Wesley notified him of his pro se obligations, *see* D. Kan. Rule 56.1(d), Ward's summary judgment motion and response contained no statement of

8

disputed facts. "But on a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (ellipsis and internal quotation marks omitted). Ward failed to do so and instead waited until his reply brief – after Wesley set forth its evidence – to provide a "Concise Statement of Material Facts," listing what he identified as the material facts that were in dispute. R. at 765. Under these circumstances, we cannot say the district court abused its discretion in deeming Wesley's facts admitted and limiting Ward to the facts stipulated in the pretrial order.

## C

Turning to the merits, Ward first disputes the district court's grant of summary judgment on his ADA discrimination claim. "The ADA protects individuals with real or perceived physical disabilities or mental impairments that substantially limit major life activities." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 896 (10th Cir. 2017) (internal quotation marks omitted). Absent direct evidence of discrimination, a plaintiff must make a prima facie case of discrimination under the *McDonnell Douglas* framework. *See Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). Among other things, a plaintiff must raise a genuine issue

9

of material fact that "[his] employer discriminated against [him] because of [his] disability." *MacKenzie v. City & Cnty. of Denv.*, 414 F.3d 1266, 1274 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018). "[O]ur inquiry focuses on whether the circumstances surrounding the adverse employment action give rise to an inference that the action was based on the plaintiff's disability." *Lincoln*, 900 F.3d at 1192-93 (brackets and internal quotation marks omitted).[2] The plaintiff must "present some affirmative evidence that disability *was a determining factor* in the employer's decision." *Id.* (internal quotation marks omitted). "This burden is not onerous," but neither is it "empty or perfunctory." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323-24 (10th Cir. 1997) (internal quotation marks omitted).

"A plaintiff claiming hostile work environment must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Williams*, 849 F.3d at 897 (brackets and internal quotation marks omitted). We evaluate "all the circumstances,

---

[2] Because Ward proceeds on a hostile-work-environment theory, we assume, "for purposes of analysis only," "that a hostile work environment can constitute an adverse employment action under the ADA." *Williams*, 849 F.3d at 897.

including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [his] work performance." *Id.* (internal quotation marks omitted).

Ward relied on the following stipulated facts:

- On March 17, 2021, Ward contacted HR Generalist Amanda Miller, alleging Darrell Boger claimed the sprinkler cleaning tool was his idea;

- On March 20, 2021, Ward emailed Clark, expressing distress and requesting assistance handling the situation about the sprinkler cleaning tool;

- On March 24, 2021, Ward informed Shane Wanner, the Regional Engineering Director of HealthTrust and Brian Leabo's supervisor, that Leabo and Boger were trying to take credit for his invention;

- On March 29, 2021, Ward filed a complaint through HCA Ethics; and

- On March 30, 2021, Ward emailed HCA Ethics, providing a chronological order of events and supporting emails.

R. at 166 (pretrial order, ¶¶ vi – x); *id.* at 301-02 (Ward's Summ. J. Mot.). He also alleged someone tampered with his property. *Id.* at 302.

These facts, even viewed most favorably to Ward, do not give rise to an inference that he experienced discrimination based on disability. These facts do not establish that anyone at Wesley even knew he had anxiety. "ADA liability cannot be based on actions taken when [an employer] was

11

unaware of [the plaintiff's] disability." *Williams*, 849 F.3d at 898. The first time Ward sought treatment for anxiety was April 15, 2021, *after* he made all the foregoing complaints about Boger and Leabo taking credit for his invention. And even then he directed his leave request to TAFW, not Wesley. Although Ward also complained at about the same time that someone tampered with his property, there is no indication anyone knew he had anxiety. This evidence, at most, indicates only that Ward's complaints exacerbated his anxiety. Indeed, Ward made that very argument in his summary judgment briefing, contending the "false claims of ownership of [his] invention" "exacerbated [his] pre-existing anxiety disorder." R. at 302, ¶¶ 1, 4. But absent evidence that anyone at Wesley knew about his anxiety and discriminated against him because of it, Ward failed to establish a prima facie case of discrimination. Consequently, Wesley was entitled to summary judgment on this claim.

## D

Ward's retaliation claims under the ADA and FMLA are also both subject to the *McDonnell Douglas* framework. One element of his prima facie case for both claims requires that he show a causal connection between protected activity and an adverse employment action. *See Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 994 (10th Cir. 2021) (ADA);

12

*Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017) (FMLA). Ward cannot satisfy this element for either of these claims.

The adverse employment action here was Ward's termination on July 15, 2021. One way he may establish causation for purposes of his ADA and FMLA retaliation claims is to show a close temporal proximity between protected activity and adverse employment action. *See Hennagir v. Utah Dep't of Corrs.*, 587 F.3d 1255, 1266 (10th Cir. 2009) (ADA); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (FMLA). But when relying on temporal proximity alone, to "justify an inference of retaliatory motive," the adverse employment action must be "*very closely* connected in time to the protected activity." *Metzler*, 464 F.3d at 1171 (internal quotation marks omitted).

Ward contends "[t]he timing of his termination closely followed [his] disability disclosure" for purposes of his ADA retaliation claim. Aplt. Opening Br. at 12. But he sought treatment for anxiety on April 15, 2021, and he was not terminated until three months later, on July 15, 2021. We have recognized that "three months between the protected activity and the adverse action, standing alone, is not sufficient to establish causation." *Metzler*, 464 F.3d at 1172. Without more, Ward cannot establish causation based on temporal proximity alone for purposes of his ADA retaliation claim.

13

Ward's FMLA retaliation claim suffers from the same problem. His FMLA leave began on April 12, 2021. But he was not fired until July 15, 2021. The duration of three months and three days between the protected activity and the adverse action is too long to establish causation without more. *See Metzler*, 464 F.3d at 1172. Accordingly, Wesley was entitled to summary judgment on these claims.

## III

Finally, Ward seeks leave to proceed on appeal without prepayment of costs and fees (IFP). To obtain IFP, an appellant must show both a financial inability to pay the required fee and a reasoned, nonfrivolous argument on the law and facts. *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005). "Leave to proceed without prepayment of fees and costs is a privilege, not a right. Courts have the discretion to revoke that privilege when it no longer serves its goals." *Treff v. Galetka*, 74 F.3d 191, 197 (10th Cir. 1996) (citation omitted). Although an appellant need to be "absolutely destitute" to satisfy the financial eligibility requirement, the court need not grant IFP when an appellant has sufficient financial means to pay the filing fee "and still be able to provide for himself and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (internal quotation marks omitted).

14

Ward's financial declaration indicates that his and his spouse's combined incomes, less their monthly expenses, leave $2,690 for discretionary spending. He also reports assets, including a home, a 2021 Jeep Gladiator, and a 2016 Nissan Maxima. To be sure, he reports sizeable debts on these assets, as well as other expenses, but regardless of how he elects to allocate his financial resources, his financial declaration makes clear that he retains sufficient resources to pay his filing fee and still obtain the necessities of life. *See Cosby v. Meadors*, 351 F.3d 1324, 1327 (10th Cir. 2003) (explaining that, regardless of how a litigant chooses to spend his money, he need not be excused from paying the filing fee if he has the means to pay because the statutory fee provisions are intended to reduce frivolous litigation and "require [litigants] to bear some marginal cost for each legal activity" (internal quotation marks omitted)). For these reasons, we deny Ward's request to proceed IFP and direct him to remit the fee forthwith.

## IV

The district court's judgment is AFFIRMED. Ward's motion to proceed on appeal without prepayment of costs and fees (Dkt. No. 12) is DENIED.

Entered for the Court

Richard E.N. Federico
Circuit Judge

15