**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 10, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

DAVID LEE SHULICK,

    Plaintiff - Appellant,

v.

STATE OF WYOMING; WYOMING
DEPARTMENT OF CORRECTIONS;
WYOMING DEPARTMENT
OF ADMINISTRATION &
INFORMATION -- HUMAN
RESOURCES,

    Defendants - Appellees.

No. 23-8040
(D.C. No. 2:21-CV-00202-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

David Lee Shulick appeals from the district court's grant of summary

judgment in favor of his former employer, the Wyoming Department of Corrections

(WDOC), in his suit alleging disability discrimination, retaliation, hostile work

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

environment, and failure to provide a reasonable accommodation in violation of the Rehabilitation Act. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

In 2014, the WDOC hired Mr. Shulick as a correctional officer at the Wyoming State Penitentiary (WSP). In February 2019, Mr. Shulick requested reasonable accommodations for his medical conditions under the Americans with Disabilities Act (ADA). At that time, his disabilities were sufficiently accommodated by permanently moving him to the checkpoint post.

In June 2019, Mr. Shulick applied for the correctional captain position at WSP. The hiring panel interviewed Mr. Shulick and three other candidates for the position, grading each candidate based on their responses to several interview questions. Mr. Shulick received the lowest score. None of the candidates were hired and the position was later reopened. Mr. Shulick reapplied but was not offered a second interview.

On December 24, 2019, the on-duty Watch Commander, Lieutenant Brown, assigned Mr. Shulick to a different post. Mr. Shulick told him that he was permanently assigned to the checkpoint post. Major Hobson then directed Lieutenant Brown to assign Mr. Shulick to the checkpoint post going forward based on his reasonable accommodation.

On January 2, 2020, Mr. Shulick was ordered to provide a urine sample for random drug testing. Mr. Shulick initially refused, asserting the drug test was retaliation for the incident on December 24, but he ultimately provided a urine

2

sample later that day.  Mr. Shulick's name was included on the randomized list sent by the WDOC's Drug-Free Workplace Coordinator on December 17, 2019.

On January 22, 2020, Captain McManis gave Mr. Shulick verbal counseling about his initial refusal to submit to the random drug test.  This was noted on a counseling form in Mr. Shulick's file.  The next day, Mr. Shulick complained to Director Lampert about the counseling form and alleged ongoing harassment.  Director Lampert assigned Deputy HR Manager Tripp and Deputy Warden Molden to investigate Mr. Shulick's complaint.  On March 18, based on the investigation, Director Lampert issued a grievance determination finding the counseling form was not based on retaliation and that Mr. Shulick's harassment claim was unsubstantiated.

On March 13, due to the COVID-19 outbreak, Warden Pacheco and Major Hobson issued guidance that high-volume-touch areas and surfaces be sanitized with a bleach solution that would be stored at the checkpoint post.  Mr. Shulick complained that the bleach fumes were impacting his health.  On March 16, Major Hobson revised the guidance so that the bleach solution was stored elsewhere and directed Mr. Shulick to report directly to the checkpoint post to limit his exposure to the fumes.

On March 31 and April 14, Mr. Shulick emailed complaints to Director Lampert regarding a change in the policy for requesting restroom breaks at the checkpoint post.  Warden Pacheco directed Major Hobson to ensure Mr. Shulick was receiving adequate breaks.

In April 2020, Lieutenant Brown completed Mr. Shulick's annual performance evaluation, concluding that growth was necessary. The evaluation identified areas that needed improvement while also noting that overall, Mr. Shulick was a good officer who could be counted on to do his job.

On April 9, Director Lampert emailed WDOC prison staff advising that cloth face masks would soon be issued to each employee and that the masks would be a required part of the uniform for all WDOC employees. On April 15, Lieutenant Brown gave Mr. Shulick two WDOC-issued masks and told him to put one on. Mr. Shulick refused. Later that day, he emailed Director Lampert about the incident and asked that he be allowed to wear a face shield instead of a mask.

On April 16, Warden Pacheco wrote Mr. Shulick a letter requesting that he wear a mask in areas where two or more people were present and advising him that he needed to provide documentation regarding his medical condition to be considered for a possible accommodation under the ADA. When Mr. Shulick arrived at work that day, Captain Eversole gave him the letter and offered him the accommodation of holding the mask over his nose and mouth instead of wearing it. He refused, so Captain Eversole sent him home. On April 17, Mr. Shulick provided a doctor's note that said he was unable to wear anything on his nose or mouth due to claustrophobia and chronic obstruction pulmonary disease.

On April 20, Warden Pacheco gave Mr. Shulick a letter informing him that wearing a mask was an essential function of his job and that his inability to wear a mask meant that he was no longer qualified to work as a corrections officer with the

4

WDOC. The letter included a list of open WDOC positions and directed Mr. Shulick to respond in writing regarding the positions for which he was qualified. That day, Mr. Shulick was placed on paid administrative leave pending his choice of reassignment. On April 27, Warden Pacheco sent Mr. Shulick a follow-up letter that included three positions that allowed for remote work and would therefore accommodate his inability to wear a mask.

On April 30, Warden Pacheco called Mr. Shulick regarding potential reassignment. Mr. Shulick insisted on a reasonable accommodation to remain in his position and asked several questions, which Warden Pacheco asked him to submit in writing. On May 11, Mr. Shulick submitted a list of questions. Warden Pacheco responded on May 13. His response included a list of four probation and parole positions, all of which allowed for remote work and had a higher pay range than corrections officer positions. The letter asked Mr. Shulick to review the positions and inform Warden Pacheco which position worked for him by May 20.

Mr. Shulick responded on May 20, expressing that Warden Pacheco's answers to his questions were unsatisfactory and doubling down on his desire for a reasonable accommodation instead of reassignment. He did not indicate whether any of the open WDOC positions would work for him. As a result, on May 22, Warden Pacheco sent Mr. Shulick an intent-to-dismiss letter, giving Mr. Shulick ten workdays to respond. On June 23, Director Lampert sent Mr. Shulick a final letter informing him that he was dismissed from his employment with the WDOC and that his period of paid administrative leave had ended.

Mr. Shulick sued the WDOC for: (1) discrimination based on a disability, (2) retaliation for his discrimination complaints, (3) creation of a hostile work environment, and (4) failure to accommodate a disability. The WDOC moved for summary judgment on all four claims. Mr. Shulick filed a short response, and the district court afforded him additional time to supplement his response. Mr. Shulick later moved for an extension of time to file his supplemental response. The district court found that he had not demonstrated good cause to extend the deadline for his supplemental response and denied the motion. Following a hearing, the district court granted summary judgment to the WDOC on all four claims and entered judgment against Mr. Shulick.

He now appeals from the order denying his request for an extension and from the order granting the WDOC's motion for summary judgment.[1]

## II.  DISCUSSION

### A.  Standard of Review

"We review a grant of summary judgment de novo, drawing all reasonable inferences and resolving all factual disputes in favor of the non-moving party." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[1] Mr. Shulick represents himself, so we construe his filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

"A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1250 (10th Cir. 2021) (internal quotation marks omitted). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015) (internal quotation marks omitted). A defendant is entitled to judgment as a matter of law "if the plaintiff fails to provide sufficient evidence supporting a necessary element of his claim." *Throupe*, 988 F.3d at 1250.

## B.  The Rehabilitation Act

The Rehabilitation Act prohibits employers "from discriminating against an 'otherwise qualified individual with a disability.'" *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012) (quoting 29 U.S.C. § 794(a)). The Rehabilitation Act incorporates the employment-discrimination standards in the ADA, *see* 29 U.S.C. § 794(d), so cases addressing ADA claims may inform our analysis, *see Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020).

Mr. Shulick presented only circumstantial evidence to oppose summary judgment on his discrimination and retaliation claims. Thus, we apply the three-part, burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 896 (10th Cir. 2017). Under this framework, a plaintiff must first establish a prima facie case of discrimination or retaliation. *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017). "The burden then shifts to the employer to articulate a legitimate,

nondiscriminatory or nonretaliatory reason for the adverse action." *Id.* (brackets and internal quotation marks omitted). If the employer makes that showing, the burden shifts back to the plaintiff to show that the employer's proffered reason is a pretext for discrimination or retaliation. *Id.*

### 1. Disability Discrimination

To establish a prima facie case of discrimination, Mr. Shulick must show:

> (1) he has a disability within the meaning of the [ADA]; (2) he was qualified, with or without reasonable accommodation, to perform the essential job functions of the position he sought; and (3) his employer refused the promotion under circumstances which give rise to an inference the decision was based on his disability.

*Rakity v. Dillon Cos.*, 302 F.3d 1152, 1164 (10th Cir. 2002) (internal quotation marks omitted).

Mr. Shulick claims the WDOC discriminated against him based on his disability by not hiring him for the captain position and by not reinterviewing him when he reapplied.

The district court first determined Mr. Shulick's claim failed because he did not provide any admissible evidence that his disability was a determining factor in the WDOC's decision not to hire him or reinterview him for the captain position. On appeal, Mr. Shulick identifies no evidence undermining the district court's analysis.

Next, the court found that, even if Mr. Shulick had shown that the WDOC considered his disability in the hiring decision, the WDOC had provided legitimate, non-discriminatory business reasons for not hiring him as captain. In support, the court noted Mr. Shulick lacked supervisory experience and would have skipped over

8

the ranks of corporal, sergeant, and lieutenant if he were hired for the captain position and Warden Pacheco attested that he had never seen anyone be promoted from officer to captain. The court further noted Mr. Shulick received the lowest score from the interview panel and that it was uncommon for the WDOC to reinterview candidates.

Finally, the district court determined Mr. Shulick had not shown that the WDOC's decision not to promote him to captain was pretextual. In Mr. Shulick's view, the WDOC never overcame the "inference that the low score was the result of discriminatory animus." Aplt. Opening Br. at 8. But he fails to identify evidence permitting such an inference in the first place. He also contends that if supervisory experience was a prerequisite for the captain position, it was "pointless to even schedule him for an interview." *Id.* But no one claimed that supervisory experience was required. And even though it was not required, nothing prevented the decisionmakers from taking it into account.

After reviewing the record, we agree with the district court's conclusions that: (1) Mr. Shulick failed to establish a prima facie case of disability discrimination; (2) the WDOC provided legitimate, nondiscriminatory reasons for not promoting or reinterviewing Mr. Shulick for the captain position; and (3) Mr. Shulick failed to show that the WDOC's reasons were pretext for discrimination. Summary judgment was therefore appropriate.

### 2. Retaliation

To establish a prima facie case of retaliation, Mr. Shulick must show: (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would find the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action. *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011). "Acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered materially adverse actions, but "a mere inconvenience or an alteration of job responsibilities will not suffice." *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (internal quotation marks omitted).

Mr. Shulick alleges several instances of retaliation for complaints he made with the WDOC, including: Lieutenant Brown's attempt to reassign him from his accommodation post; the random drug test days after he refused the reassignment; Captain McManis giving him verbal counseling and placing a counseling form in his file about his initial refusal to submit to the random drug test; attempts by HR to reach him regarding his complaints when he was on leave; bleach being used and stored in his post during the COVID-19 outbreak; a change in the policy for requesting restroom breaks at the checkpoint post; Lieutenant Brown conducting his checks of the checkpoint post on foot; Lieutenant Nitschke's review of his electronic logs; and a negative performance evaluation.

The district court concluded that none of the actions Mr. Shulick alleged were materially adverse. The court reasoned that Mr. Shulick was not reassigned, randomized drug testing is part of WDOC policy, and the list was issued several days prior to the reassignment incident. According to the WDOC HR Manager, the verbal counseling and related form were not considered formal discipline and Mr. Shulick was on intermittent leave when HR attempted to contact him as part of its investigation into his complaint. The court also found Mr. Shulick was never refused a restroom break. Moreover, the court reasoned that the use of bleach to clean a prison environment during the COVID-19 pandemic, post checks, and review of logbooks were merely alterations to Mr. Shulick's job environment. Finally, the court noted that while Mr. Shulick's performance evaluation indicated that growth was necessary, it also provided that he was a good officer who could be counted on to do his job.

On appeal, Mr. Shulick points to no evidence that the alleged retaliatory instances harmed his job prospects or disadvantaged him in any way. Under these circumstances, we agree with the district court that no rational trier of fact could conclude Mr. Shulick suffered a materially adverse action.

### 3. Hostile Work Environment

To establish he was subjected to a hostile work environment, Mr. Shulick "must show that a rational jury could find that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working

environment." *Williams*, 849 F.3d at 897 (brackets and internal quotation marks omitted). He must also produce evidence from which a rational fact finder could conclude that the employer took the offensive actions because of his disability. *Id.* at 898.

The district court determined that no rational fact finder could conclude that any of the myriad instances Mr. Shulick alleged had altered the conditions of his employment. Mr. Shulick's opening brief fails to challenge that determination and does not otherwise adequately pursue a hostile-work-environment claim. Accordingly, we decline to consider any argument against the district court's treatment of that claim. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

### 4. Failure to Accommodate

To establish a prima facie failure-to-accommodate claim, Mr. Shulick must show: (1) he is disabled, (2) he is otherwise qualified, (3) he requested a plausibly reasonable accommodation, and (4) the WDOC refused to accommodate his disability. *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). An employee is "otherwise qualified" if he "with or without reasonable accommodation, can perform the essential functions of the employment position." *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) (internal quotation marks omitted). "Essential functions" are the "fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1). "To facilitate the reasonable accommodation, the federal regulations implementing

12

the ADA envision an interactive process that requires participation by both parties."
*C.R. Eng., Inc.*, 644 F.3d at 1049 (brackets and internal quotation marks omitted).

Mr. Shulick alleges the WDOC failed to accommodate his disability when it
terminated his employment because he refused to wear a mask during the COVID-19
pandemic.  The district court determined the WDOC had established that the mask
requirement was an essential function.  Next, the court said the accommodation
Mr. Shulick requested—not wearing a mask or only wearing a face shield—was
facially unreasonable.  Finally, the court found Mr. Shulick failed to show that the
WDOC did not engage in the interactive process to identify potential reasonable
accommodations.

On appeal, Mr. Shulick argues the WDOC violated his right to reasonable
accommodation by failing to engage in the interactive process.  We disagree.  After
determining that Mr. Shulick was unable to perform an essential function of his job,
the WDOC offered him numerous opportunities for reassignment.  *See Aubrey*, 975
F.3d at 1012 (If an employee is unable to perform an essential function of his job,
"reassignment to a vacant position can be a reasonable accommodation and is
particularly amenable to consideration during a genuine interactive process between
the employee and employer.").  Like the district court, we conclude Mr. Shulick did
not present evidence that the WDOC failed to engage in the interactive process to
identify a reasonable accommodation.  Summary judgment was therefore appropriate.

## C. Motion for Extension

"A schedule may be modified only for good cause or with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (internal quotation marks omitted). We review a district "court's refusal to modify a scheduling order for abuse of discretion." *Id*.

Mr. Shulick argues the district court erred when it denied his motion for an extension of time to file his supplemental response. In support, he asserts the court "granted Appellees every extension requested but denied [him] the same consideration despite Appellee's obvious advantages against a *pro se* plaintiff." Aplt. Opening Br. at 50. In denying Mr. Shulick's motion, the district court noted that it afforded him twenty-five days to respond to the WDOC's summary judgment motion and found that he had not demonstrated good cause to further extend the deadline. On appeal, Mr. Shulick has not shown the district court abused its discretion. We therefore affirm the district court's denial of Mr. Shulick's motion.

## III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Bobby R. Baldock
Circuit Judge